Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216

Plaintiff, In pro-se



SEP 27 2021

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TODD ASHKER,

        Plaintiff,

    v.

C. PFEIFFER, et al.,

        Defendants.

_____/

No. 1:21-cv-00423-NONE-EPG (PC)

SECOND AMENDED COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF,
AND DAMAGES

(42 U.S.C. § 1983, CIVIL RIGHTS)

Demand for Jury Trial

RECEIVED

SEP 27 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

## I. JURISDICTION & VENUE

1. This action is brought pursuant to 42 U.S.C § 1983, to redress the deprivations under color of state law, of rights secured by the Constitution of the United States. Jurisdiction is pursuant to 28 U.S.C. §§ 1331 & 1343. Plaintiff seeks damages, as well as declaratory & injunctive relief (per. 28 U.S.C. §§ 2201 & 2202). *Plt. requests Court to exercise supplemental Jurisdiction over state breach of (SA) per. § 1367.*

2. Venue is proper pursuant to 28 U.S.C. § 1391(B)(2), because the unlawful acts & ommisions occurred within the Eastern District of California.

## II. PARTIES

3. Plaintiff Todd Ashker, is serving a term-to-life sentence in the custody of the California Department of Corrections & Rehabilitation (CDCR). At all times relevant to the complaint he has been confined in Kern Valley State Prison (KVSP).

4. Defendant Scott Kernan, was at all times relevant herein, the Secretary of CDCR. As Secretary of CDCR, he was the highest ranking official thereof and as such, responsible for the overall supervision, management, and control of the state prison system; this includes the care, custody, and treatment of all persons confined therein; and for promulgating & rescinding the rules & regulations for administration of all CDCR‑ Prisons (per. Cal. Penal Code §§ 5054 & 5058). At all times stated herein, Defendant Kernan was personally aware of, and responsible for allowing, the continuation of ⌈ the systemic customs, policies & practices⌉at issue in this complaint resulting in the unconstitutional acts and ommisions, based on his acts & failures to act; thereby he is personally responsible for the serious harm(s) to plaintiff complained of herein.

5. Defendants Ralph Diaz, Kathleen Allison (current CDCR Secretary), Sandra Alfaro, and Connie Gipson, were at all times relevant herein, high-level CDCR officials; holding positions therein of: Secretary of CDCR; UnderSecretary; Director; and Associate Direct- or. As such, each had the same duties and responsibilities as Defendant Kernan, and each and all of them have been personally aware of, and involved in, the unconstitutional acts & ommisions that are specifically attributed to each of them in this complaint. Each has therefore directly and proximately caused the serious injuries & ongoing violation(s) of plaintiff's rights, maliciously and intentionally, as set forth below.

6. Defendants C. Paris, and J. Prelip, at all times relevant herein, were "special agents" assigned to CDCR'S Office of Correctional Safety (OCS-SSU); who each had primary roles in Plaintiff's Departmental Review Board (DRB) Hearings at issue in this complaint acting in tendem with the above named Defendants.

7. Defendants Brian Moak, and Alexandria Perez, were at all times relevant herein, holding the position of: CDCR'S Chief of Classification Services Unit (CSU): And, the CSU Correctional COunselor III, respectfully; who each had primary role(s) in Plaintiff' (DRB) Hearings, at issue in this complaint, acting in tendem with above named Defendants.

8. Defendant C. Pfeiffer, is Warden of Kern Valley State Prison (KVSP); & at all times specified herein, he has acted in concert with above named defendants, personally & intentionally causing serious harm to plaintiff, as detailed below.

9. Defendant A. Alafa, was at all times relevant herein, the KVSP Sgt./Lt. of the KVSP-STGI/Institutional Gang Investigations Unit (IGI); at all times specified herein, he acted in concert w/above named defendants, personally & intentionally causing serious harm to plaintiff, as detailed below.

10. Defendants Hightower, & Ortiz, were guards at KVSP 'A' Fac. [they are also CDCR 'guard-union' (CCPOA), members, holding 'leadership/representative' positions of said union (on behalf of KVSP's union membership interests); & at all times specified herein, they acted in concert w/above named defendants, personally & intentionally causing serious harm to plaintiff, as detailed below.

11. Defendants Stebbins, Hammer, & Speidel, were KVSP ('A' Fac., Associate Warden, Capt., & Lt.); & at all times specified herein, have acted in concert w/above named defendants, personally & intentionally causing serious harm to plaintiff, as detailedbelow.

12. Defendant(s) (DOES 1-to-10), are presently unknown,& are expected to be known-through discovery; & at all times specified herein, they too acted in concert w/above named defendants, personally & intentionally causing serious harm to plaintiff, as detailed below.

13. EACH & ALL OF THE ABOVE NAMED DEFENDANTS [KERNAN, DIAZ, ALLISON, ALFARO, GIPSON, PARIS, PRELIP, MOAK, PEREZ, PFEIFFER, ALAFA, HIGHTOWER, ORTIZ, STEBBINS, HAMMER, SPEIDEL, & "DOES 1-to-10"], are sued in their official capacities for declaratory & injunctive relief; AND, in their personal capacities for damages.
                          ⟨INDIVIDUAL⟩
                                 ]]
                      III. INTRODUCTION

14. Because of his influential-leadership role(s) in the prisoner class action Ashker, et al. v. Newsom, et al., USDC N.D. Cal.#4:09-cv-05796-C.W. ['ASHKER'case]; & related "PBSP-SHU, SHORT CORRIDOR COLLECTIVE-PRISONERS HUMAN RIGHTS MOVEMENT" ['PBSP-SHU, SCC-PHRM'], & resultant global exposure & condemnation of CDCR's custom, policy(s), & practices re: subjection of 1,000s of prisoners to decades of STATE SANCTIONED SOLITARY CONFINEMENT [TORTURE], thereby, forcing major reform(s) re: CDCR's gang-mgt.(e.g., end-to 'status' based solitary; improved conds; training to ensure'confidential information' [C.I.], is 'reliable & disclosed accurately,'etc.); release of more than (3,000) class-members from solitary-to-general population [G.P.], & closure of some solitary units - [incl., CDCR's prized "PBSP-SHU, SHORT CORRIDOR"], plaintiff is among the highest profile 'public-interest-case' prisoners in CDCR's system today.

15. This is a claim for declaratory & injunctive relief, & damages,brought pursuant to 42 U.S.C. § 1983, against the CDCR's Lead Defendants' in above referenced 'ASHKER'& case [Kernan, Diaz, Allison, Alafaro, & Gipson, Paris, Prelip, & Moak], & their agents

(KVSP Defs; & "DOES 1-to-10"), for violations of plaintiff's 1st, 8th, & 14th Amendment
U.S. Constitutional rights, via defendants' concerted-conspiratorial, on-going, progres-
sively-provocational-retaliatory, intentional & malicious acts/ommisions [w/out any
legitimate penological justification, <u>for purpose of</u>:destroying his influential-leader-
ship role(s) in 'ASHKER' case,& growing 'Prisoners Human Rights Movement; <u>incl.of</u>: CDCR-applying
Defs' custom, policy/practice of "systemic misuse of confidential info. as a pretext to
justify the return & retention of class members to solitary (& PBSP-RCGP, 'where you'll
be in purgatory until you die, or debrief, period.), in violation of the settlement
agreement." ( "ASHKER", Order filed 4/09/21, Granting Extention of Compliance Monitoring
of Settlement Agreement." DOC, 1440; & related: "PLTS' SECOND MOTION FOR EXTENSION OF
SETTLEMENT AGREEMENT BASED ON SYSTEMIC DUE PROCESS VIOLATIONS (CORRECTED)", filed 12/15/
2020, <u>and</u>, "PLTS" REPLY IN SUPPORT OF SECOND MOT. FOR EXTENSION OF SA BASED ON SYSTEMIC
DUE PROCESS VIOLATIONS." filed 4/30/21....DOCS 1411 & 1448 );& related harm(s) to in plts case-repeatedly applying
plaintiff's welfare/well-being, spanning  January 2016-to-the-present....

## IV. FACTS

16. Plt. originally filed the above ref'd "ASHKER" case in 2004, on behalf of him-
self, & a similarly situated prisoner, challenging two-decades of solitary confinement
& related subjection to progressively more torturous conditions for purpose of coerc-
ing prisoners (CDCR'validated' as prison gang affiliates) to "debrief"[become informant].

17. On 9/10/12, after securing counsel, plt. filed a (SAC), converting the suit into
the putative class action asserting that lengthy exposure to crushing conds. in PBSP-
SHU violated the 8th Amendment; & that CDCR's policy/proceedures for indefinite assign-
ment/retention in SHU violated the 14th Amendment's guarantee of due process [<u>e.g.</u>,
validating prisoners as 'prison gang affiliates' based on"systemic misuse of C.I. as a
pretext...." &/or,'innocuos associational activity,' resulted in indefinite solitary -
until you die, parole, or debrief;' & related, unwritten "No Parole" policy, for same]
Plts' brought suit seeking declaratory/injunctive relief against the Governor of Calif.,
the Secretary of CDCR, the CHIEF of CDCR's Office of Correctional Safety [OCS], & the
Warden of PBSP; & on 3/09/15, the court granted Plts' 'Mot. to File A Supp. Compl.'
expanding the 8th Amend. claim to encompass [ALL] CDCR SHUs.

18. Plt. is also a [co-founder], of the ( "PBSP-SHU, SCC-PHRM"], formed in 2010, by
similarly situated, long-term solitary conf. prisoners of all racial-grps., for purpose
of wide-spread education/exposure of CDCR's (State Sanctioned Torture of 1,000s. <u>Id</u>.);
beginning w/their collective-coordinated writing campaign throughout 2010-2011; evolv-
ing into the mass prisoner hunger strikes of 2011/2013 [ = GLOBAL EXPOSURE & CONDEMNATE
Plt. personally authored several key documantes; w/input,& approval of"collective", that
were mailed out & went viral [<u>e.g.</u>, 'PBSP-SHU, Short Corridor's'<u>Formal Complaint</u> re:
CDCR's Decades of Human Rights Abuses..."; "The (5) Core Demands"; <u>and</u>,the historic
" 2012 Agreement TO END RACE HOSTILITIES," [<u>Opposed by</u> CDCR & CCPOA; <u>promoted ever</u>

3.

since by plt. & rest of collective; & resulting in an unprecedented-major decline in violence across entire system (CDCR/County Jails), & emulated by youth in many communities, ever since.]. Plt. is one-of-four (Principle Prisoner-Class REPS); per. grps vote.)

19. CDCR/OCS [& CCPOAs leadership-reps]-[incl. Defs' Kernan, Diaz, Allison, Alfaro, Gipson, Paris, Prelip, Moak, Perez, Hightower, & Ortiz], response to above ref'd "ASHKER" case & related "Collective's" Peaceful Activism Action(s), has been negative in general [& they view plt. as being the 'catalyst' responsible for [the global response, & suit's] combined success on forcing unprecedented-major changes to deeply entrenched CDCR custom, policy & practices, beneficial to the prisoner class & public in general; & seen as very [damaging to certain 'stake-holders' interests/agenda]; resulting in: CDCR Defs' in the "ASHKER" case, singling plt., & (3) other (Principle Prisoner-Class Reps), out for a 'counter propoganda; smear-campaign in failed effort to recoup some of CDCR's legitimacy by [renewed public media demonization of] plt. as a 'white racist-murderous prison gang-leader, acting in league w/three other murderous gang leaders, to force prisoners to participate in life endangering hunger strikes for purpose of manipulation intended to regain, & increase, power & influence among prison pop., & communities,...' etc. [e.g., L.A. Times, article, dated 7/28/13 (w/plt's photograph provided by CDCR/OCS, showing his tattos from waist-up); & CDCR Sec. Beard's, L.A. Times, Op. Ed., article, dated 7/30/13; Also of note is: The 2004, response to Plt's, CDCR-602 Appeal, requesting rehab. programming ops-to meet parole bd. recommendations of '03; wherein, PBSP Warden, & CDCR Sec. Woodford, Denied request, stating '...you are member of terrorist org., & until you agree to fully cooperate w/authorities to help bring down org., you will remain in SHU with out programs, & should never be deemed suitable for parole.']

20. "ASHKER" Defs' also responded to the above by recruiting long-term soltary confined prison gang affiliates [debriefing/debriefed], in their counter-efforts [e.g., C.I. & 'self-professed' A.B. member Elrod, was recruited by Defs' in 2012/2013; featured in Crescent City Triplicate news article on front page (incl. lg. photo of his face), re: PBSP-SHU, & his completion of 'debriefing' process
And, Defs' "Declaration of J. Bryan Elrod In Support Of Defs' Opp. To Plts' Mot. For Class Certification." DOC # 249, filed 7/18/13; which is also quoted in part, in the CCPOA's "Opposition To Settlement Agreement." DOC # 487, filed 9/01/15 [See also: CCPOA' 9/03/15, Press Release "CCPOA Denounces CDCR's Agreement To End Unlimited Use Of Solitary Confinement."]. CDCR Defs' have continued this practice-progressively ever since, as exemplified below [re: "sysdemic misuse of conf. info. as a pretext...."]

21. On 8/31/15, the "ASHKER" parties signed the Settlement Agreement (SA); after mo's of intense negotiations [plt's focus was on terms to limit Defs' ability to place/retain class members in solitary, and/or, RCGP (based on CDCR's alleged 'safety concerns.'] The (SA) incls. the below terms relevant to plt's claims herein [per. DOC # 424-2, filed 9/01/15]

4,

22. (SA) ¶¶ 25-27 [are in re: Special Warden's Inst. Classification Committee (ICC) review of class members for approval of release to G.P.; absent explicit exceptions - one of such being upon Warden's determination that "...there is a substantial threat to their personal safety should they be released to the g.p. as determined by a preponderance of evidence...." In which case the Warden refers case to the Dept. Rev. Bd. (DRB), w/recommendation for placement in RCGP. "...The DRB retains discretion, in accordance w/existing authority, to house that inmate in alternate non-SHU, non-Ad.Seg. housing, such as a Sensitive Needs Yard(SNY), or RCGP, until the inmate can be safely housed in a g.p. environment. The DRB shall articulate the substantial justification for the need for placement. Thereafter, during their 180-day reviews, the ICC shall verify whether there continues to be a (demonstrated threat) to the inmate's personal safety; & if such threat no longer exists the case shall be refered to the DRB for a review asap."

23. (SA) ¶ 28 [is in re: creation & purpose of the RCGP ("Restricted Custody G.P.") It is much more restricted than Level IV., G.P.s; and, placement therein for CDCR's alleged 'safety concerns' has become a 'defacto replacement' of prior 'status based indefinite solitary,' because, it's virtually impossible to prove something that never existed - no longer exists (since inception Jan. 2016, none of the prisoners CDCR has classified as A.B. affiliates, have been released from RCGP to g.p.); it also nullifies a chance for parole & is stigmatizing] [Id.,"Ashker" case, order of 4/00/2/; & Plfs' Briefs at above para 15]

24. (SA) ¶ 34 [is in re: CDCR's agents adhering to CCR, Title 15 § 3321, re: C.I., and, provides training to ensure that C.I. is reliable, & accurately disclosed....]

25. (SA) ¶ 49 [includes requirement for parties to participate in 'semiannual meetings' to discuss (SA) compliance/non-compliance issues; these meetings include the (4) 'principle prisoner class representatives' one of whom is plt. (SA, P.18:20-21)].

26. (SA) ¶ 54 [is in re: CDCR shall not retaliate against class members, nor others who may be involved in the (SA) Compliance Montitoring, etc....] (CDCR-Defs' HAVE BREACHED,/VIOLATED (SA) PARAS #25-27, 34, & 54. SEE Below)

27. CDCR Defs' initiated their 'plan' [that being-in part-to retain plt. in solitary, & place him into the PBSP RCGP, indefinitely,...via custom of "systemic misuse of C.I. as a pretext...." SEE ABOVE ¶¶ 15, re: 'plan.'], at plt's 'Special Wardens' ICC's' that were conducted by "ASHKER" Def.[ PBSP-Warden Ducart], on 9/17/15,& 10/08/15; wherein, Ducart followed his part of 'plan; by rote reliance on (2) C.I. Memos, re:CDCR's A.B. dropout/debriefed collaborators (recruited by Defs' agents between 2012-2014; Id.¶ 20), as pretext for decision that plt. '...would remain in PBSP-SHU Administrative Status, pending DRB Review of ICC recommendation for (RCGP) placement based on "overwhelming evidence of substantial safety concerns." Plt's written 'rebuttal; & verbal points, refuting the C.I.s' allegations, were ignored. [Plt. vindicated by DRB, as follows]

28. On 1/14/16, the DRB Hrg., Chaired by CDCR Dir. Harrington [w/CDCR Chief of Classification Services Unit (CSU), Robertson; & "ASHKER" Def., Ruff, Special Agent in Charge (OCS) . Prior to hrg.(on 12/22/15), plt. was given (18-C.M. Disclosures, spanning 1995-

to-2015; & authored by cdcr-CSU, Correctional Counselor III (CC III), Def. A. Perez); Plt. authoored a (15pg. typed 'Rebuttal-Memo', refuting all of the allegations in the disclosures; which provided more info. than the ones Ducart, et al., provided). DRB admitted plt's 'rebuttal-memo' [had merit]; agreeing w/plt's position ofhaving no evid. supporting Ducarts decision [Id.]. DRB found all of the C.I.s 'safety concerns' based allegations to be ['unreliable, uncorroborated, hedesay....'], & approved plt's relaase to g.p.

29. DRB's 1/14/16, approval of plt's release to g.p., after 29½yrs of solitary, was misleading; DRB rejected Ducart's determination that '...overwhelming evid. of safety concerns mandated RCGP placement.' [anyone who actually reviewed the C.I.s' claims in C.M.s Ducart relied on - objectively, would have seen they were 100% baseless].The DRB still adhered to CDCR Defs' 'plan,' in at least two-ways, as follows.

30. DRB claimed that conf. info. in C.M.s ref'd above did point to 'enemy-concerns,' to justify restricting plt's g.p. placement '...to KVSP 'A' Fac., ONLY, based on enemies at all other Level IV., G.P.s.' [KVSP 'A' Fac., was THE most restrictive g.p. in state; meaning that plt. spent MORE time in a smaller-cell, than he had in SHU]; DRB did this because, plt's 'rebuttal memo' points exposed the transparency of Defs' C.I.s false 'safety concerns' allegations; & Harrington, Robertson, Ruff, were fully aware of fact that plt's "ASHKER" case counsel were ready to go to court re: (SA) violation(s), if DRB upheld Ducarts recommendation. So, DRB made a show of 'approving release to g.p.'as well as by reliance on CDCR Defs' "systemic misuse of C.I. as a pretext...." to justify limit on g.p. placement to most restrictive g.p. in state [operating akin to a 'modified-supermax lockdown unit than a g.p. See Below ¶¶34    ]; under 'pretext' of 'enemy con-cerns' [based on C.I.s allegations DRB had just found 'unreliable.']

31. The second move this DRB did is in the DRB ACTION Chrono, dated 2/05/16 [the wk. prior to plt's release to KVSP G.P., on 2/12/16], wherein, at p.#   , under [CSU RECOMM-ENDATION], Chief Robertson (& CC III, Def. Perez), issued the following explicitly clear [directive], to KVSP 'A' Fac., Def. Hightower, Ortiz, et al.,: "....CSU recommends rel-ease to the g.p. where enemies are not housed, contingent in that Ashker is able to avoid conflict in his future involvement w/affiliates of the AB, and/or affiliates of other STG-1s." When taken in context of Chrono's references to numerous alleged 'plots, conspiracies,'etc.; & based on plt's 39yrs of personal experiance in CDCR, it's clear, Defs' were pointing out what would be required for KVSP rank & file to justify plt's return to solitary, & indefinite RCGP placement [examples follow].

32. Plt. was released to KVSP 'A' Fac., g.p., 1-block, on 2/12/16; where he was on Max A Custody, & A2/B Privilege Grp ["Involuntarily Unassigned"], resulting in only 5-to 7 hrs. per week 'out-of-cell' time; & still being fed all meals 'in-cell.'

33. Within a day or two of plt's arrival, prisoners from each racial grp. told him that approx. 1-wk before he got there, 1-block, 2d Watch Floor Officer [Def. Hightower], had told his 'porters' [cell-block workers], '...Todd Ashker's coming from PBSP soon,

you've probably heard of him, & I'm just giving you the heads-up that his own people
want to kill him.'['own-ppl' is ref. to whites/AB]; & plt. heard same story from many
other prisoners, from all races, & from different cell-blocks on 'A' Fac., G.P. [he'd
hear this from prisoners when he'd go to yard; & patio-area for his meds. 3X a day; all
stated the rumor(s) were via staff, naming Hightower, Ortiz, & others, incl. 2d Watch Lt]
Based on info. & belief, Defs' Hightower,& Ortiz, held [leadership/reps positions] on
behalf of KVSP's CCPOA's membership; & w/in 2-wks.,or so, of plt's arrival, Hightower,
personally told plt. "...I know who you are, & I know all about your lawsuit; & I'm the
CCPOA Rep. here at KVSP, who's been going to meetings at CDCR Headquarters, to oppose
your lawsuit & (SA)." Hightower, is also a former 'gang-unit' member [IGI/ISU], thus, is
well versed in CDCR's custom re: "systemic misuse of C.I.s as a pretext..." Hightower's
intent w/above 'rumor-spreading,' was to plant a seed in prisoners minds that plt. was
[targeted]; hoping at least 1-prisoner would 'run-w/it,' by dropping note saying plt's
going to be attacked, which can be used to justify plt's retn to solitary for a 'safety-
concerns' investigation, etc. [Hightower, Ortiz, et al., efforts failed, just as Ducart'
did; however, the point is, such are support examples of Defs' in "ASHKER"case, who are
the same Defs' in THIS (new case):Kernan, Diaz, Allison, Alfaro, Gipson, Paris, Prelip,
Moak, Perez (w/asst. of named KVSP Defs'), concerted, conspiratorial manner to execute
their 'plan' (Id.¶ 15); such acts/ommissions are evidence supporting 'intent'& 'custom,
practice, pattern' re: "systemic misuse of C.I. as pretext..." And, above acts combined
w/other examples below, exacerbated plt's damaged psyche-causing mental-break [See: ¶ 74]
The above named CDCR Defs' were all personally aware of their KVSP agents [Defs'Pfeiffer,
Alafa, Hightower, Ortiz, Stebbins, Hammer, Speidel's], acts summarized herein; CDCR Def'
directed, & approved of such, via their acts/ommissions, as further supported below.

34. Plt. spent a month observing 'A' Fac., operations, & received alot of input from
his fellow "Short Corridor Collective" class-members there, who all recognized the same
problems he did; that 'A' Fac., was operated more like a "Modified-SHU Control Unit,"
than a G.P. [mandated in (SA), & agreed to by 'class-members' based on their prior G.P.
experience(s), & CDCR's own regulations].E.g., less 'out-of-cell' time; fed 'in-cell'via
tray-slot, rather than communal dinning-halls. And, a majority warehoused in their cells
most of the time, due to 'lack of jobs/educ./voc., rehab., etc. [In violation of (SA)]

35. Plt. then drafted a (6pg) Memo., addressed to "ASHKER" case lead Def. Kernan, et
al., dated 3/17/16 [SUBJECT: Partial Non-Compliance w/SA Terms]. The Memo was reviewed
by plts' counsel, & (3) other 'Principle Prisoner-Class Reps', who agreed w/position(s),
& ADDED such applied to conditions at their prisons too [via ADDINDUM]. The Memo summar-
ized a full spectrum of supporting examples re:"Non-Compliance w/SA"[incl. quotes from
the (SA); & related references to CDCR's CCR, Title 15, Regs., etc.].

36. The Memo, w/Addendum, were created w/ invaluable asst. from plts' attys Weills,&
Travis; & was presented to CDCR Defs' Kernan, et al.[Diaz, Allison, Alfaro, Gipson],prior

7.

to the first 'Compliance Monitoring' semiannual-meeting of "ASHKER" case parties w/reps & counsel [per.(SA),¶ 49. Id.¶ 25.]. Plt. attended the meeting held on 4/17/16, w/atty Travis; via phone-conference call conducted at KVSP's [BPH Bldg]. And, it began w/Defs' patting themselves on the backs for doing a great job carrying out what they viewed as being their responsibility re: (SA) compliance. As soon as it was Plts' turn, & mention of their Memo's position(s) of [Non-Compliance], it got ugly. Defs' were obviously angry & openly hostile towards plt. [refusing to discuss anything relating to the MEMO.] The result was, the oppresssive conditions & provocative/retaliatory acts therein, ESCALATED.

37. Shortly after the 4/17/16, meeting, Def. Hightower, told plt. 'words come down from Headquarter's that you're not to be treated differently than other prisoners here.' Which, based in part on how he'd been treated [targeted prior to arrival], & his observance of the ways other 'class-members' had been treated [e.g.,as summarized in 3/17/16, Memo.], plt. took Hightower's words to mean an (increase), in the provocational/retaliatory acts, & this was borne-out [examples of which follow].

38.i) at least 1 'tier-raid' of plt's tier, during which, Hightower personally participated in tearing-up/trashing plt's cell [prior acts were incl. in plt's Memo.];

ii) another guard working 'A' Fac., 1-Block, 3d Watch, telling his 'porters' he's 'not able to allow them to run around the tiers after dinner anymore because Ashker is at Inmate Advisory Counsel [IAC] meeting, telling on staff.' [pattern of falsehood(s)];

iii) Def. Ortiz, incl. plt's fiance in his provocation/retaliatory acts, by trying to end their 3d day[of their 1st visits; plt's 1st contact visit w/loved one in (30yrs)], early. And, when that failed, he threatened to put plt. on 'visiting-restriction'falsely claiming 'to-much-contact.' Then, ending their last (2) visits in Oct.'16 [after 2½, & 45-mins; the last one, waited until they'd spent $20, on food, at 1st bite, ends visit]

38. Such ESCALATION cont'd ⌷ RE: 2d 'semiannual-meeting' held 11/17/16: Plt's  counsel sent Defs' [Kernan, Diaz, Allison, Alafaro, Gipson], plt's (7pg.) Memo on 11/16/16; in which, plt. respectfully summarized percieved distance/misunderstanding(s) between the parties re: terms, spirit, & intent of the (SA); w/suggestions for resolving such amicably, thereby poss. ending need of continued 'Compliance Monitoring.' And, (4pgs) of Memo summarized escalating 'visiting problems,' using De f. Ortiz' actions towards plt. & his fiance, during their July/Oct. 2016, visits, as examples.

39. At the meeting [ph. conf. call at BPH Bldg.], plt. read Memo's (4pgs) re: visit problems [ALOUD]; examples of Ortiz' visiting practices [against class-members & familys], & Defs' [Alafaro, & another], responded disrespectfully. Speaking plt's name disparagingly, & repeatedly interrupting his presentation, in failed effort to discredit him re: 'visiting' subject. Defs' antagonistic attitude of disdain was solely directed towards plt., & during this exchange, Defs' stated there was 'a lack of CDCR-602, Inmate APPEALS re: Visiting.' And, plt. promised '100s would follow.' [the alleged 'lack of appeals,' was due to class-members concerns about retaliation for such; as summarized in Memo....]

40. Plt. [& "ASHKER" Plts' counsel+principle prisoner reps], are certain their conf. legal communications are monitored by Defs' (incl.,"semiannual" Compliance Monitoring calls ref'd above]; such monitoring (incls: KVSP CCPOA Reps=Defs' Hightower, Ortiz, etc) is exemplified by the escalation in acts/ommissions following the above ref'd 'semiannual-phone-conference calls' on 4/17/16, & 11/17/18, during which CDCR Defs' Kernan, et al., obvious negativity yowards Plt's positions, were followed by KVSP Defs [e.g., below].

41. December 2016, plt. kept his word to CDCR Defs; assisting KVSP 'A' Fac., prisoner class w/creation of a detailed [Group 602 Appeal, re: "Visiting" issues raised at 'semi-annual' meeting(s), per. related "Memos"]; & prisoners from all (8) cell-blocks signed.

42. In response to combo [of above 'monitored conference calls,' & Grp. 602 Appeal], 'A' Fac., rank & file [incl. Defs' Hightower, & Ortiz], began 'tearing-up/trashing' all cells; & making visitors wait for an hour, or more, for 'their' prisoner to arrive; & then,'cancelling-visit' after an hour, or less. [per. prior pattern/practive/custom: prisoners from all (8) cell-blocks, told plt. staff told them "...thank Ashker for'cell trashing' & 'visiting treatment' behind him'pushing paperwork against staff.'] [this was stated by Hightower, when plt. was present].

43. Dec. 2016, plt's brought out late to visit-room [while Def. Ortiz, had had sitting visitor wa iting for more than an hour]; upon arrival, Ortiz, jams him up '...I hear you have a complaint against me behind visiting.?' This was a direct ref. to plt's Nov. '16, 'semi-annual meeting' presentation, wherein, plt. read aloud from 'Memo.' re: Ortiz' visit sub-ject (Ortiz, 'heard' about it, via illegal recording of 'confidential conference call.')

44. After the Dec. '16, visit, Ortiz, was searching plt., when plt. said "My fiance is afraid to come visit after the way she was treated in Oct." Ortiz, replied, w/smirk on face, "If that made her afraid, she should be afraid, because ppl get run over just walking down the streets around here all the time." [this wasprovacational threat....].

45. On 3/01/17, plt. sent "Ashker" case counsel a declaration, wherein, he summarized the above ref'd provocatory/retaliatory acts that were part & parcel of 'plan' initiated the week prior to his arrival [Id.,¶¶27-33]; this decl., incl. ref. to a large meeting of KVSP 'A' Fac., prisoners (in which, Def. Kernan, made presentation re:ehab. program opps, after which, Def. Stebbins, told prisoners-in plt's presense-'don't file 602's if you want such opps.').

46. On 3/16/17, "ASHKER" plts' counsel informed CDCR Defs' of intent to file an 'On going Retaliation Motion" on plt's behalf [a 'violation' of (SA) ¶ 54]; &, in response to the cobination of all of the above, CDCR Defs' [KVSP agents-Defs' Stebbins, Hammer, & Speidel], followed through w/their role(s) in the 'plan,' by: Locking down entire 'A' Fac., G.P., on 3/20/17, based on CDCR's customary "systemic misuse of C.I. as a pretext.. .." In this instance, they alleged that an "annonymous-note" was presented early that a.m., stating that plt. was planning to have 1-Block, staff assaulted w/weapons, because plt. was mad about being placed on 'C' status privilege grp...' [all involved staff knew

9.

this to be false; & when plt. was notified of this 'note,' he pointed out that, 'his leadership role(s) as a prisoner-class rep. focused on seeking peaceful/legal avenues for positive reform(s) - made such claim rediculous' The (3) Sgts. agreed,& had plt. returned to his cell].

47. Soon after returning to his cell, staff tell plt. to 'packup your property, you-are going to ASU for a 90-day Staff Threat Investigation.' Plt. told them to inform the supervisors' that 'they were going to have to extract him, because such placement back in solitary was obviously part of the on-going retaliation he'd been subject to since arrival at KVSP; therefore, his only recourse was to peacefully-protest via refusal to voluntarily move, thereby, forcing a real invetsigation, etc.' A short time after this, Def. Hammer, came to plt's cell, and plt. stated the same position to him [including, that plt. was'not going to physically resist, but he also was not going willingly....']

48. Capt. Hammer, documented the following: "...he sat on his lower bed stating, 'you will have to come get me, I will not resist, but I will not go voluntarily.'" Defs' Stebbins, & Hammer, then ordered Lt. Speidel, to initiate a 'dell-extraction,' Speidel, then ordered Sgt. Anderson, to fire (2) gas-grenades into plt's cell, & sprayed can of 'pepper-spray' directly on plt's head area, all the while, plt's lying passively on his lower-bunk, in small-sealed cell (which was a type of 'gas-chamber' for over 9-minutes). Then, (5) guards in full riot gear, ran into cell, landing on top of plt. w/large plastic shield & placing him in handcuffs & leg-shadles (so tight he could not walk); then, Def. Ortiz, used a wheelchair to take plt. several hundred yards-in full view of other prisoners-to (ASU). During this trip, Ortiz, told plt. 'Ashker, I thought you were going to be smart when you got here & mind your own business; instead, you were stupid, pushing paperwork & telling on staff. Now, you're outta here for good.' [that evening, plt. attempted to wash off chemical(s), & spent entire night feeling he was being 'skinned-alive' due to water making his face, chest, & hands burn so badly.].

49. Plt. was housed in solitary, from 3/20/17-to-4/01/17. On 3/31/17, Chief Deputy Warden, Tolson, Chaired plt's ICC Hrg., & stated in part, that he 'checked into the "Staff-Threat" subject, & knew there was no validity to it.' And, ordered Plt. to be released to 'B' Fac. G.P., on 4/01/17. As soon as plt. arrived on 'B' Fac., plt's [fellow class members] told him that 'A' Fac., staff had,'trashed all of the cells there, after plt's extraction; & told the prisoners they should thank Ashker for it.'

50. Related to all of the above is, Defs' Kernan, Diaz, ALLISON, Alfaro, Gipson, Pfeiffer, et al.,], also acted in concerted, conspiratorial acts/ommisions re: Violating plt's right to assistance of counsel [incl., ability to have 'confidential communication' w/same]; in response to counsels' personal & professional, supportive assistance [re: plt's 'semiannual-meeting' Memos & related meetings w/parties, per."ASHKER" Compliance Monitoring - wherein, plts' position was CDCR Defs, were 'partially non-compliant']. As well as, counsels' close bond w/plt., & fiance (providing solid personal support during plt's extremely difficult efforts to try to adjust & cope w/sensory overload on G.P.)

51. Plt. [& counsel] believed Defs' agents were reading his incoming/outgoing 'confidential legal' mail; as well as, monitoring 'confidential legal phonecalls' & legal-visits [conducted at the KVSP Board of Parole Hrgs (BPH), office bldg area]. This was based on-in part- various staffs acts/ommissions that appeared responsive to subjects discussed in 'confidential communications' [i.e., mail,& after calls/visits]

52. On 8/15/16, Plt's atty [Carole J. Travis], sent KVSP Warden (Def. Pfeiffer), a letter, "RE: Interference w/ Confidential Legal Mail"; included w/letter, were (4) of Plt's outgoing legal mail envelopes, addressed to atty. Travis-between March & June'16 [all exibiting clear signs of having been opened, & re-glued closed].

53. 'Ashker case' attys. Weills & Travis, were both among the most active members on the legal team [since inception in 2011]; in terms of communicating w/class members & visiting Plt. at Kvsp [as well as, at PBSP-SHU).

54. Weills & Travis each had critical roles, working closely w/class members, incl. Plt., necessary to help reach the 8/31/15, (SA); and, assisting Plt. w/creating his 'semiannual-meeting' Memos-and, at his side during April/Nov. 2016, phone conference meetings w/Defs, per. (SA) provision [See: above §   ] [Each also aware of Plt's hard-ship re: KVSP G.P. sensory-overload; & forming close bonds w/Plt. & fiance, provided stabailzing guidance/support to them. Plt. has no living family & they are like family]

55. In addition to her representation & legal support for "'Ashker case' Weills was an outspoken, public opponent of CDCR's policies & practices re: solitary-confinement; including making numerous public speeches, media interviews, & mobilizing public support for the mass prisoner hunger strikes in 2011/2013 [+ making appearances before, & having meetings with, members of Cal. State Legislature to advocate for changes re: solitary. Weills also was Plt's staunchest supporters, publically rebutting CDCR's attempts to publically demonize him [& the other three principle prisoner reps]

56. On 3/01/17, Plt. gave Defs' agents sealed 'confidential legal mail' consisting of his (8pg) decl. re: "Ongoing Escalating Retaliatory/Oppressive ACTS By Defs' Agents"

57. On 3/03/17, Def Gipson, advised Weills & Travis, they were "temporarily banned" from all CDCR Institutions, as well as confidential calls/visits/mail, pending the outcome of CDCR's investigation into potential violations of Cal. Code of Regs (CCR), Title 15, § 3178(s)(3). [restrictions range from 1-yr,...lifertime]

58. April 10, 2017, Def. Kernan, informed Weills, he would not lift the ban; & on Aug. 23, 2017, Def. Allison informed Weills, CDCR's investigation had concluded that she "had numerous & extensive illegal cell-phone communications w/inmates, jeopardizin the security of CDCR Institutions" & her "Life-time" bann would be upheld. During Diaz term as CDCR Sec., he too upheld this ban. [as her current See Allison]

59. Plts Defs' Kernan, Allison, & Gipson, imposed an (18 month) ban on Travis [based on alleged similar conduct, as Weills. Notably, the difference appears due to relate to fact that Travis was not as publically outspoken/supportive, like Weills had been]

60, Plt. has never been notified of, nor charged with, anything re:alleged 'illegal-cell phone communications' [between August 2016 & March 20, 2017, Plt. was charged with possessing (4) cell-phones, introduced to KVSP 'A' Fac., by Defs' agents. Defs' agents confiscated these phones, and accessed all data on them & nothing on them resulted in any charges/write-up(s); the phones were all 'used'having been in 'A' Fac., months be66re Plt. got them]

61, Plt's communications w/Weills & Travis, were due in large part to the fact that Defs' agents violated his right to 'confidential communications' with Weills & Travis [summarized above §§51-57]; &, of crucial importance is fact that such communications were not in capacity of 'lawyer-client.' They were strictly personal, mainly re: Plt's concerns about his fiance's well-being in the U.K.; and, personal difficulties adjusting to G.P., after decades in solitary.

62, On info. & belief, the penalties imposed on other attys, or other individuals [e.g. family, friends, etc], who have engaged in cell-phone conversations w/prisoners [are no penalties at all]; equating to grossly disproportionate penalties being imposed on Plt' atty/familial type friends; who are closest he has to family [supporting him through mental/psych. difficulty(s)] The above is supported by fact that CDCR confiscated more than 10,000 cell-phones, per. year, since 2010; at least 8,000 were confiscated in 2016 and, on 'A' Fac., in August 2016, nearly 200 were confiscated in one search]

63, Attorney Dan Siegel, has also been staunchly supportive of 'Ashker case' members, & Plt. [Plt. & Siegel, also formed a close bond, going back to the 2011/2013 Hunger Strikes, when he would visit Plt. w/Weills, & continuing correspondence].

64, After Weills & Travis' March 2017, bans, Siegel, assisted Plt. w/a few legal things and, he visited Plt. at KVSP [including supportive legal visit mid-May 2017, after Plt' temporary mental break]

65, Feb. 14, 2019, Plt. had an approx. 2-hour legal visit w/Siegel in KVSP's BPH Bldg in brightly lit room, w/staff observing visit behind mirror. Mr. Siegel had just formal-ly joined the 'Ashker case' legal team [w/focus on assisting team's discovery process re: Plt's on-going retaliation & related placement/retention in KVSP-ASU solitary conf]

66, Mr. Siegel's asst was necessary in response to Weills & Travis bans; and lack of attys on team based in California who could visit & work closely w/Plt. on above issues, and, asst Plt. in role as principle prisoner-class rep. [re:(SA) Compliance-Monitoring]

67, Prior to 2/14/19, visit, Plt. had asked lead counsel [Jules Lobel] to send him copies of some documents, unrelated to the Retaliatory/Housing Placement Challenge, & that's what he thought was in envelope Siegel slid across table to him during visit, saying 'Jules had faxed the documents inside to him & asked him to pass on to you.' Plt. did not bother to open envelope, believing it was the material he'd requested & spent time discussing discovery tactics & goals relevant to retaliation issue(s) [and,

68. the new case plt. had filed on 10/01/18. Ashker, v. Kernan, et al., USDC N.D. Cal. # 3:18-cv-05796-WAH. Plt. has sent Siegel, a copy of case w/he filed it, & they spoke about possibility of Siegel's assistance with prosecuting the case....].

69. After the visit, plt. tossed the envelope Siegel, had given him onto his top-bunk w/stack of other legal envs, & forgot about it until days later. That's when he discovered it was not the material he'd requested from Mr. Lobel. Rather, it was some 'redacted-documents' stamped "Attys Eyes Only," re: plt's 'Retaliatory/Housing Place-ment" subject. Plt. quickly reviewed the docs; unconcerned about Mr. Siegel's error - he had just joined the team & plt. had rec'd similar 'redacted' docs, in (pro-se),cases.

70. Soon after, plt. had a 'legal-call' w/Lobel & Siegel, & he immediately told them about his discovery; shortly after this call, Mr. Lobel, advised Defs' counsel of this inadvertant error on Mr. Siegel's part, & a day, or so, later, plt. was instructed to provide the docs to KVSP Capt. Martinez, who placed them into env. & mailed backto Lobel.

71. Defs' Diaz, Gipson, & possibly others, used the above honest mistake of Siegel's [which was immediately addressed, & resulted in no harm to anybody; other than exposure of Defs' "systemic misuse of conf. info. as a pretext...." re: docs at issues....], as the pretext to justify their additional retaliatory act of banning plt. from communicat-ing/visiting w/Mr. Siegel. Thereby denying plt's ability to have Siegel's assistance & support on "ASHKER" case, & new cases [as well as, his personal support-he was plt's sole remaining, close friend, mentor, supporter/legal advocate, based in California...].

72. Def. Gipson's 3/15/19, letter to Siegel, stated:"....this letter wil serve as notice that the CDCR has determined that at the time of your visit on 2/14/19, w/an inmate in the "ASHKER" case, you inappropriately provided confidential documents to an inmate which jeopardized the life of a person(s) (sic) & violated security of the faci-lity. Pursuant to CCR, Title 15, § 3178(s)(3), CDCR has determined that the severity of the conduct necessitates a 'lifetime' exclusion from the "confidential privileges," incl visiting, telephone, mail privileges...." The ban was subsequently reduced to (10) years. [which remains grossly disproportionate punishment; not onyl for Mr. Siegel, but also, plt. as well, who is now deprived of Mr. Siegel's uniquely qualified professional & per-sonal asst.].

73. Plt. had many discussions w/Weills, & Siegel, re: subject(s) in above cited 'new' case [which, is now (2) 'new'cases, due to N.D. Cal., court's severance & transfer of plt's claims/defendants in (CASE at Bar). They expressed interest in representing plt., & the ban(s), stopped this; & plt, has been anable to find replacement counsel to do so.

74. Additionally, the ban(s) of Weills, & Travis, on 3/03/17, caused  serious harm to plt. at a time when he desperately needed their personal knowledgeable support [e.g., plt. had been having serious problems coping w/G.P. environment, based on combo of: 29½yrs., of endless solitary conf. (TORTURE), for purpose of coercing him to debrief - inclusive of CDCR Defs' repeated customamy "systemic misuse of C.I. as a pretext...."

13,

to justify such [Id., ¶¶27-33]; in addition to (ALL THE ABOVE NON-STOP PROVOCATIONAL - RETALIATORY ACTS], initiated prior to plt's arrival at KVSP [Id.]. Combined w/related (increasing concerns about fiance & kids well-being where they reside in the U.K.; & which Weills, & Travis had been assting plt. with); the complete & sudden loss of their invaluable support, was a major contributing factor in all the above resulting in plt's serious psych., mental-break, & serious irreparable harm therefrom, as follows [NOTE: Defs' Kernan, Diaz, ALLISON, Alfaro, & Gipson, were all personally aware of plt's psych damaged persona. e.g., "ASHKER" case, Defs' counsels' 2014, video-taped depo. of plt. & other named plts.; Plts' filing of (10) expert witness rpts in early 2015, attesting to such harm(s); the 2017, Stanford Rpt. "Mental Health Consequences Following Following Release From Long-Term Solitary Conf. in California." & Kernan's 2017, "60-Min's" admit on his belief that LONG-TERM SOLITARY DRIVES MEN MAD

75. On 5/01/17, plt. had been on 'B' Fac., for a month; on 'C' privilege grp. status entire time, meaning: no job/educ./vov./rehab.-self-help; no phonecalls/appliances; & little 'out-of-cell' time. He had rec'd recent mail, which indicated domestic-issues fiance had been experiencing had worsened, & she was asking for help. That (am), when plt., & other were released fromcells to go to patio for property, plt. signed for his book, & asked the Capt. [who's office is next to property-room], if he'd help plt. get emergency-call to his atty./fiance to check on their well-being; based on the mail he'd received? (the Capt. had previously helped plt. w/getting his property sent from 'A' Fac) & seemed receptive; asking plt. to wait in the lt's office. Plt's there a few minutes, when 'Gang-Investigators' show-up, asking him 'What's going on?' Plt. summarizes, & they start asking more ?s, form 'out-of-left-field' [e/g., 'Is he responsible for putting fiance in danger?' & 'What are his concerns about his own safety?'], which increases plt' concerns, & agitation; because no-one seems to be hearing him, & aren't doing anything to give him the call. He explains again,'it's nothing about him, he just needs a quick call to check on them.' The Capt. says he'd 'see what I can do,' as he leaves; w/invest-igators ahead of him, leaving too. [the entire exchange lasts a few minutes].

76. Several minutes pass, & plt. asks the Lt. 'what's going? My outside loved ones may be in jeopardy, & no-one's doing anything to get me a simple call?' Lt. replies, 'calm down, you're not doing yourself any good right now, & you're not doing anything to help the people who want to help you out either.' The whole scenario is stranger by the minute, & the exchange w/Lt. increases plt's worry & agitation. At this point, some-one behind plt., asks him if he's 'ready to sign the 'agreement to debrief'? This is when plt. snapped to game being played [it was obvious plt. was not in his right mind re: concerns about loved ones; & Def. Alafa, et al., sought to take advantage of this]. Plt. decided to play it back at them, saying 'yeah, okay, i'll sign.' And, when someone handed handed paper to him, he didn't bother to read it, it didn't matter what it said, he had no intention of 'debriefing'& as he signed paper, he told them he was adding his own clause next to signature "Subject to certain conditions." Automatically nullifying" on the spot, period. [Plt's challenged CDCR's 'debriefing' policy more than (30)yrs., &

knows the process is 100% voluntary [failure to fully cooperate/collaborate w/agents is grounds for removal from process; they don't allow prisoners to dictate terms, period].

77. In response to Plt's counter-move [nullifying document on the spot]; Alafa, et al., increased the retaliatory tactics, having Plt. sent to ASU; where, on arrival, he's told his placement is due to "self-expressed safety concerns" which is false. Plt. responds, saying he's going on hunger strike to protest. Staff then claim he's suicidal [resulting in (3) days in Med. Clinic (CTC), on 'suicide watch'. Plt. didn't eat/drink for (3) days, repeatedly telling staff he's not suicidal; all of which greatly incresed his psych mental break, incl. concerns about loved-ones]

78. The evening of 5/01/17, Agent West, asks Plt. 'What's going on?' Plt. summarizes his concerns re: fiance & kids; & need to call atty/fiance. Plt. is clear-concerns are not about him, nor anyone else in prison [& that he'd never said he was suicidal].

79. On 5/02/17, Plt. gets call w/atty Lobel; he's out-of-his-mind w/worry [re:fiance], & games going on; Lobel promises to look into things,& sends Def. Kernan, email [re: 'hostile environment at KVSP, resulting in some sort of suicide watch.' Gets ∅ Reply]

80. Early (am), 5/03/17, Plt's still in (CTC), on alleged 'suicide watch' when Defs' agents place Plt. in 'yard' gage at end of tier & few minutes later bring [AB dropout who'd been working w/CDCR-OCS, since early 2016; who plt. has known since 1980], out in wheelchair & put in cage next to Plt's, w/guard seated nearby. Plt. knows it's a setup, probably being recorded, & lets dropout do most of the talking [which is all about the way ABs on 'B' yard tried to kill him, & that's why he want over to CDCR's side, so he can get paroled asap.' Plt's reply was,'all he'd said was b.s., & wrong.' which clearly angered dropout, ending conversation [this was typical OCS setup. See: ¶¶100    ]

81. The evening of 5/03/17, West shows up as followup effort to get Plt. to debrief. Plt. told him, he'd talked to his atty. the day before,& was advised by atty. not to talk to anyong. [Plt. reiterated his concerns were solely re: fiance,& that his atty. was checking on this; & West refused to let Plt. call either of them]. West stated 'the Dept. recognized Plt. wasn't in right mind on 5/01, & had stepped back in response.'[&not true]

81½. On 5/07/17, ASU-2, undercover C.I. [on Plt's tier], gives ISU agent a note C.I. had manufactured, & claimed another prisoner on tier had sent C.I. stating Plt. told him Plt. 'was dropping-out.' [this was false; the result of Defs' agents spreading false rumors-statewide-that Plt was 'debriefing' beginning on morning of 5/01/17]

82. On 5/08/17, Plt. is taken to ASU-2 Committee Rm., where Agents West & Claytom, are seated. They tell Plt. their 'superiors asked us to make a full presentation of debrief process, in case your atty. has any questions when you talk to him.' It was clear they were looking to get Plt. to agree to 'debrief' [e.g., Lt. Clayton, beginning w/ 'People are talking bad about you, & your only option at this point is to debrief, or the RCGP route, where you're in purgatory until you die, parole, or debrief.' 'What are your feelings about this process? We want to help you successfully come over to our side.']

Plt. never had any intent of 'debriefing,' & his focus was to get as much info. from them possible [& helpful to decades of challenges re: policy.]. He is clear that concerns were RE: fiance, period [& he's still obviously deeply concerned about her well-being].

83, On 5/09/17, Plt. gets followup call w/ atty. Lobel, who provides Plt. w/peace-of-mind [finally]; assuring Plt. he spoke w/fiance,& they were okay. After call, Plt. had a (3) hr. visit w/Dr. Kuppers ['Ashker case' Plt's expert re: Solitary]; Kupers emails Kernan, concerned re: Plt's mental-state,& requests weekly calls. Kernan refuses.

84, On 5/10/17, Plt. sends counselor CDCR-22 Form RE: ICC on 5/11, stating: his 5/01, ASU placement was solely re: concerns re: outside loved ones, which were resolved via atty càlls on 5/02 & 5/09; & he requested release back to 'B' Fac., G.P.

85, On 5/10/17, Defs' Diaz, Allison, Alfaro, & Gipson, exchanged emails re: Plt's ASU placement. These emails evidence-evolving stage of Defs' above [& Kernan], et al., conspiratorial 'plan' to continue Plt's indefinite solitary confinement, & placement in PBSP-RCGP [where you'll be in purgatory until you die, parole, or debrief.' Id., ¶*32]

86, The emails begin at 1:57pm, from KVSP-to-CDCR Defs': "Today (5/10/17) Ashker has submitted a Form022 requesting release from ASU, as his issues have been resolved. I have attached a copy of the Form-22....we have ≇ 3 days to respond."

87, Next email is at 7:05pm. From: Diaz, To: Alfaro [w/copy to Gipson & ALLISON], "Kathy, I would be interested in what our plan is at this point. I sense we are being led down a pre-planned road. Keep me & legal in the loop on classification outcome."

88, Next email is 7:14pm. From: Allison, To: Diaz & Alfaro [w/copy to Gipson] "KVSP will be conducting a safety investigation, he may be released the earliest next week."

89, Next email is 8:30pm. From: Diaz, To: Allison: "let's talk tomorrow. I would think he would be a retention in ASU pending resolution of his concerns, Let's not get pushed into anything by his attys. 'Ralph'" (pun intended by Diaz).

90, The above emails are notable, in part, for fact that Diaz, et al., ignore first email re: Plt's'concerns'being resolved, already; & Diaz' push for ASU retention, with obvious animosity towards Plt's legal-team. [CDCR Defs' followed the 'plan'....]

91, On 5/11/17, Def. Pfeiffer, Chairs Plt's ICC; Plt. reiterates what he'd written on the 5/10. Form-22 [ref'd above]. Pfeiffer, orders IGI Lt. Alafa, to conduct safety-concern investigation, & retained Plt. in ASU pending completion [ICC Chrono, of 10/13, falsely claims Plt's ASU placement was "self-expressed safety concerns" Plt's repeated Form-22 denials,& requests for correction of faldehood, are ignored].

92, On 5/18/17, Def. Alafa, interviewed Plt. [re: Safety-concerns investigation]; Alafa disclosed a summary of Confidential Memorandum (C.M.), dated 5/07/17 [re: ASU-2, C.I.-note to ISU.(Id., ¶31½). Plt. denies C.I.s allegation, & confirms having no safety-concerns; & requested release to 'B' Fac. [Plt. signed the CDCR-128B, Chrono, Alafa had w/him. confirming this;& per. CDCR/KVSP custom, this should result in release to G.P.]

93. Def. Alafa, closed his investigation on 5/18/17, recommending plts. release to KVSP's 'A' or 'B' Fac., G.P. & he forwarded rpt. to Pfeiffer, who approved,& let stand.

94. On 6/01/17, Chief Deputy Warden, Tolson, Chaired plts. ICC; he confirmed review of Alafa's rpt & recommendation, & approved plts. release back to 'B' Fac., G.P.

95. By 11:45 am, plt. is on way to "B' Fac., only to have bus pull u-turn at 'B' Fac., & return to ASU-2; wherein, Sgt. tells plt. 'Warden said not to release you,' & 'I've been ordered to isolate you on 'H' tier [& not return you to 'D' tier, you just left].'

96. On 6/01/17, approx. 7:45pm, plt's given a 'CDCR-114, Ad/Seg Placement' Form,saying he'd been"retained in ASU pending further enquirey into possible enemy/safety concerns at KVSP. You will remain in ASU pending completion of investigation."

97. Plt. [& "ASHKER" counsel], eventually discovered this unprecedented reversal of ICC's approval of plt's release was Kernan/Diaz'et al, cont'd retaliatory 'plan'.[See:¶¶⁵₂

98. On 6/02/17, plt. has call w/atty. Lobel [summarizing above unprecedented act]; & on 6/06/17, plt's given a 'CDCR-1030, CONFIDENTIAL-DISCLOSURE' Form, authoered by Alafa, claiming basis for plts retention in ASU, '...was based on Alafa's discovery⊄ of a PBSP phonecall on 5/26/17, wherein, a ranking member of Mexican Mafia STG-1, told recipient of call that, he heard Ashker was debriefing, & had confirmed it was true; & based on this discovery, plt's life may be in danger.' [this claim by Alafa, proved to be a false pre-text in Defs' concerted, conspiratorial effort(s) to aid CDCR Defs' 'plan'. See: ¶¶110; ¶¶113]
In ALAfAs subsequent c.m. dated 6/13/17, he admits relevant part of call wasn't seen till 6/06/17.

99. On 6/07/17, atty. Lobel "Requests Emergency Hrg. RE: Retaliation Subject" [prompt-ing Def. Alafaro's email(s) to ???]; in response to above events, that same afternoon, Def. Alafa, leads a squad of 'investigations unit' staff on an ASU-2 raid of (14) cells, allegedly♦for purpose of cell-searches & interviews of [both:G.P. & SNY prisoners], who'd been housed in close proximity to plt., seeking evidence of plt. having safety-concerns, if released to G.P.⊄ [No evidence was discovered; thus, partial support of no-concerns. However, the true intent of the 'raid/interviews' isillustrated by fact that, 5 or 6 of the (14) cells were on 'D' tier (Sgt had been ordered not to return plt to, 6-days before) & (4) of the prisoners interviewed on 'D' tier, were plt's peers, (3) of whom sent decl-arations to atty. Lobel, detailing the way Alafa, & another investigator, used 'inter -views' to try & smear plt's name [again], by implying plt. had ['walked off 'B' yard, by going suicidal.']. Thus, it's fair to assume that the same occured for all (14) interview [of both: G.P. & SNYs, who were then released from ASU-2, to G.P. & SNY G.P.,gossiping]..

100. Late afternoon of 6/07/17, Alafa, & partner, proceed to the KVSP [CTC=Med.Complex] to 'interview' the AB prison-gang dropout [whom CDCR/OCS, had stashed there in 2016, to facilitate working/collaborating w/CDCR/OCS, et al., investigations against the AB]. This was the same C.I. placed in [CTC 'yard' cage next to plt. the a.m. of 5/03/17. Id., ¶¶80  ∅]; this C.I., followed his 'script' provided by Defs' agents; claiming plt. had personally told him (plt) had'told the whites on 'B' yd. he was 'debriefing' before walk-off yd, & had told the mexicans in ASU same thing,etc., thereby ⁴violating rules of AB.

Plt. recognized CDCR/OCS Defs' tactic as soon as the CTC guard had asked plt. to go to (dTC 'yard'), because [known C.I.'wants to talk to you']; & plt. wanted to see where Defs' (game(s)) were going [Id.,¶8b]. This C.I., made a few fatal errors when Alafa, made contact on 6/07/17; which,along w/unreliability of prior 'debrief' tales, exemplify CDCR Defs' customary "systemic misuse of C.I. as a pretext..."[SEE:¶¶15 ] See more below.

101. On 6/08/17, ICC Chaired by a [G. Jaime?], retained plt. in ASU, "...specifically based on the PBSP Phonecall discussion about plt. requiring safety investigation...."

102. The above summarized events leading up to, & including,'unprecedented reversal' of ICC's release of plt. to G.P. on 6/01/17, exemplify CDCR Defs' Kernan, Diaz, Allison, Alfaro, Gipson, et al., concerted, conspiratorial intent to harm plt. [iclusive of manu-facture of false info. deemed req'd for their 'plan,']. IT SNOWBALLED FROM THERE....

103. "ASHKER" plts' counsel' efforts to obtain identity of person who ordered reversal of ICC on 6/01/17, was repeatedly stymied by CDCR Defs! Requiring counsel to obtain court order on 8/09/19 (mandating Defs' provide identity & make available for deposition); Defs' then claimed that it was Ralph Diaz [CDCR Undersecretary, at time],reversing ICC.

104. Diaz, was deposed by atty. Lobel [on 12/04/19]; whereupon, he provided unbelievable testimony [e/g.,Diaz alleged that he "...just happened to be touring KVSP w/Warden Pfei-ffer the morning of 6/01/17, when Pfeiffer said, 'We just did Ashker's committee.'" Diaz said "Okay." Pfeiffer said "There's my IGI Lt., he must be coming out of committee." Diaz claims he then asked this Lt. "I hear committee released Ashker to G.P., what do you think will happen?" & "Lt. replied, 'He's going to get wacked.'" A short time later, Diaz claims he sees an ISU Officer walking by, & he asks him the same ? And ISU Officer replies, "He's going to get assaulted." Diaz then says, "That's when I told the Warden, 'Place him back in Ad/Seg., I don't want him on the yard yet.'" "I was concerned & wanted it investigated to find out what was going on." [This story makes no sense. KVSP's IGI Lt. Alafa, had already closed his investigation on 5/18, & Pfeiffer approved plt's return to G.P.; what Diaz' story does do is, it corresponds to Defs' 'plan' (See: ¶¶84-90,emails⊘

105. Plt's counsel then had to obtain another court order for Defs' to reveal identity of the [IGI Lt.] Diaz was refering to ? Defs' response was they 'did not know who it was.' [Fact is: KVSP only had (1-IGI Lt.) at the time [Alafa]; Diaz' go to 'fix-it' man. Diaz' problem is,...Alafa, was not at KVSP on the day/time at issue.].

106. Def. Kernan, was aware of Diaz' reversal of ICC's decision on 6/01/17 [per.Diaz' email to Kernan(which is totally 'redacted'??); & Kernan, complicitly approved-let stand.

107. On 6/26/17, Def. Alafa, gives plt. copies of several '1030-Disclosures & CDCR-128Bs prior to ICC set for 6/29; this was first time plt. was aware of many of the documents & immediately noted many falsehoods [e.g., Alafa's 128-B, Chrono, dated 5/01/17 "Agreement-To-Debrief." Included false claim that`Alafa'conducted a pre-debrief interview....' ].

108. On 6/27/17, plt. gave ASU-2, Capt. his(7pg.)"Rebuttal-Memo.", specifically refuting all items being reviewed [Alafa's 6/26, 'Disclosures'], for presentation to the ICC....

*109.* On 6/30/17, Def. Pfeiffer Chairs Plt's ICC Hrg.; Pfeiffer ignores Plt's rebuttal points, & states his [predetermined] decision "...there is overwhelming evidence of safety concerns prohibiting release to G.P." And, refers case to DRB w/recommendation for RCGP placement [Pfeiffer's decision was arbitrary & capricious retaliatory action, in support of CDCR Defs' 'plan' against Plt. Supported by fact there was no evidence & certainly no 'substantial evidence' required for such an act; demonstrated below]

*110.* Moments after this ICC Hrg. [ CDCR Defs' CSU Chief Moak & CC-III Perez], order Pfeiffer, to have Alafa, obtain evidence to corroborate his C.I.'s allegations re:Plt being targeted by AB [documented in Alafa's C.M. dated 6/07/17. See: ¶ above]. Moak & Perez, recognized Alafa's C.I. was not credible, when they reviewed Plt's 6/27/17, Rebuttal; so they ordered him to manufacture corroboration, which he tried to do that same day [Alafa, contacted (3) other AB dropouts on KVSP'S SNY G.P., who had been pre-briefed ahead of time, as demonstrated by their perfectly scripted corroborating words documented in Alafa's (3) C.M.'s dated 6/30/17]. In spite of Pfeiffer & Alafa's efforts Moak & Perez, knew the (4) C.I.s claims not credible evidence, as summarized below]

*111.* Between 7/05 & 7/07/17, Plt. is given additional 1030-Disclosures & CDCR-128Bs, Prior to DRB SCHEDULED FOR 7/14/17; and on 7/10/17, Plt. sends DRB his 31pg. Rebuttal-Memo, specifically addressing & refuting all of the docs being used as pretext to just-ify Placement in RCGP [there were also (11) Declarations from peers, supporting Plt.]

*112.* On info. & belief [e.g., Plt's brief review of a 'redacted' copy of a DRB "DRAFT" Chrono, created by Def. Perez-mid-July, in re: Plt's 7/10, & 6/27, Rebuttal Memos; & Def. Allison's Deposition Testimony, on 12/04/19], the following occured: Defs' Moak & Perez, reviewed & investigated Plt's rebuttal points, specifically refuting all alleged 'evidence' relied on by Pfeiffer [on 6/30/17], & manufactured thereafter; & they agreed w/Plt's position [such was not valid evidence]. They specifically found: there was no evidence Plt. ever participated in any pre-debrief/debrief interviews; & refused to answer questions/did not provide any information. Plt's concerns were solely re: fiance.

*113.* The "DRAFT" Chrono, further stated the allegations from (4) C.I. [AB dropouts], were not reliable, credible, etc.; same finding re: PBSP- Phone call and notably concluded w/reference to the "Ashker" case (SA) ¶ 27, emphasizing quote therefrom re: RCGP placement requires "...substantial safety concerns supported by a preponderance of evidence." AND ABSENT ADDITIONAL EVID. PRIOR TO DRB HRG.- THE CRITERIA WAS NOT MET.

*114.* Defs' Allison, et al., responded by: having some created [again]: On 7/19/17, Plt. issued 1030-Disclosure, authored by IGI Sgt. at 'North Kern S.P.' alleging Plt. was a priority target of AB; however, the subsequent, related Disclosures issued 7/26/17 [& fact Sgt. admitted he destroyed the audio recdings right after interviews], enabled Plt' legal-team's determination the Sgt. had used manipulation-incl. leading ?s, to coerce C.I. to tell Sgt. what he was seeking [this includes staff rumors about plt. & is yet another example of many re: CDCR Defs' 'systemic misuse of C.I. Info. as pretext....']

115. On 8/01/17, plt's given a '1030-Disclosure' [re: C.M. of 7/26/17]; based on 'old' information from (May '17), presented as 'new' info. [NOTABLE FOR: author's determination source "unreliable/uncorroborated." This nullifies use in decision making process.] On same day, plt. sent DRB his (12pg.)'Supp. Rebuttal', refuting above alleged 'new' items of [7/19, & 7/26]; as best poss., due to 'insufficient info.' re: 7/26/17, item.

116. On 8/04/17, Def. Allison, Chairs DRB Hrg. [w/Moak, Paris, Perez, Alafa]; Allison follows her part of 'plan,' ordering plt's placement in PBSP-RCGP [solely based on 7/26, C.M., & basis thereof; stating it was evidence of "...Substantial safety concerns per. preponderance of evidence...outweighing plt's rebuttal(s), oral presentation, & (11) peer declarations." Plt. objected based on fact that[7/26, C.M., & basis thereof], is not valid evidence of safety concerns, period. [During hrg. & in plt's (3) related 'reb-uttal memos; plt. pointed out concrete facts supporting zero safety concerns (e.g., he had the love, respect, & 100% support of 'prisoner class'members=prisoners & outside loved ones=who were always thanking plt. on G.P. yard & visiting, during (14) months on "A' & 'B' Facs., G.P.-where he'd had zero problems w/any prisoners, inspite of staffs' efforts. The above remained true in ASU-2, as well; & plt. remains one of the (4) prin-ciple prisoner-class reps.-to-this-day-& CDCR Defs' have been unable to produce any type of 'tangible-concrete' evidence=zero audio-recordings, notes, etc. of 'active' g.p. prisoners, affirming plt's 'targeted'. All they've managed is C.I.s allegations-proven to be fabricated=Defs' "systemic misuse of C.I. as a pretext...." [Id.¶¶¶15,28,112-113]

117. Defs' Allison, et al., totally disregarded plt's above ref'd points [which were 100% supported by irrefutable facts & ref. to evidence supporting same, in his rebuttals as acknowledged in Defs' Moak, & Perez' mid-July '17, DRB "DRAFT" Chrono (Id.,¶¶ 112-113] Defs' reliance on above ref'd item is evidence of arbitrary, capricious, & malicious - intent to cause irreparable harm to plt. [Compounded at every ICC/DRB Hrg. that followed]

118. Defs' Allison, Moak, Prelip, Perez, Alafa, reaffirmed 8/04/17, decision at DRB Hrg of 3/22/18, based on pretext of "...continuing threat based on totality of evid. of AB affiliated inmates I.D.ing Ashker as targeted for murder, corroborating info. rev'd by DRB of [8/04/17]; "there's lack of evid. to review & asst. in a decision for release."

119. Defs' alleged support for above, was ref. to 'new' C.M.s of 11/08/17, 12/11/17, & 2/14/18. This was not 'new' evid. [it is evid. of "systemic misuse of C.I. as pretext.." exposed in "ASHKER" case, on-going discovery re: same claims in THIS (SAC). Id.,¶¶15,28]

120. Allison's above quote re:"..lack of evid. to rev..." is also false. [See: ¶¶ 118]

121. Early Feb. '18, plt. given '1030-Discls' [re: C.M.s of 11/08/17, & 12/11/17]; to be rev'd by DRB set for 2/12/18. Plt's 'Staff-Asst.' followed plt's (4)pg. Memo.-req's obtaining support for plt's G.P. placement from (4) of plt's peers, housed at (4) differ ent Level IVs. These were ['co-plt. class-members,' & 'co-PBSP-Short Corr. Collectives'/ 'co-signees' on "2012 Agreement To End Hostilities."]. One of whom added, 'he was nearly done w/ "Petition Supporting Ashker's Release To 'B' Fac., G.P."signed by ALL prisoners.

20.

122. Plt's 'Staff Asst.' also responded to specific ?s [re: (2) C.M.'s ref'd above]; he confirmed C.M. of 11/08/17, was based on 'old-historical allegations' [deemed meritless Id., ¶¶28 ], & not 'new' evid.; & U.M. of 12/11/17, 'contained no details/specifics...' [Allegations based on hearsay; staff-rumors,& agents providing info. for corroboration].

123. 2/09/18, Plt. sent DRB, (5pg.Rebuttal Memo), refuting all items re: Hrg. sched. for 2/12/18; DRB postponed Hrg.; & on 3/16/18, Plt. gets (3) 'new' 1030-Disclosures & (4) CDCR-128Bs [In re: to Plt's Rebuttal, Defs' manufactured 'new' evid.; same as re: 6/30/17, ICC; & 8/04/17, DRB; See: ¶¶25-116 ]

124. On 3/20/18, Plt. sent DRB (4pg."Supplemental-Rebuttal" Memo), specifically refuting the alleged 'new' C.I. allegations. Defs' have never produced a single item of 'valid-concrete-evidence'; once again, ignoring Plt's Rebuttal evidence [incl. 'Staff-Asst's' support]. During Hrg. on 3/22/18, Allison, made half-hearted attempt to have staff try & obtain the "Support Petition re: Ashker's Release To 'B' Fac., G.P." prep'd by Plt's peer,& signed per. penalty of purjury by reps on behalf of all 'B' Fac. prisoners; Plt. finally obtained a copy of "Petition...." from atty. in late March, after hrg. [Defs' also completely misrepresented Plt's oral presentation during the hrg.[Chrono,of 3/23/18]

125. On 1/15/19, Hon. Judge Wilken, issued an Order, in 'Ashker case,' Granting Plt's counsels' req. to proceed w/Ongoing Retaliation Mot. [re: Defs' acts above violating (SA) ¶ 54's 'anti-retaliation' clause. RE: All Above ¶¶s      , of Plt's 2d Amend. Compl,HERE] court stated "Plt's burden is to demonstrate retaliation; & that his release to G.P. will pose no risk to his safety, per. preponderance of evid." [Discovery has been on-going]

126. In response [to above order], CDCR Defs' went into 'overdrive' [re: manufacture of 'evidence']; via agents collaboration(s) w/debriefing/prison-gang dropouts, in ongoing effort(s) to manufacture 'land-slide' of 'corroborating new evidence' of Plt. being targeted [incl. special attn. on trying to discredit his (Solid peer support); notably, Defs' have still not been able to produce a single item of 'tangible-concrete-evid.' [e/g/, no audio recdings, written notes, etc., proven to come from a single active AB affiliate, affirming allegations from C.Is' all of whom have been discredited.Id,15,13]

127. The above is supported by following facts/evidence: i.) 8/06/19, Plt. given (180, 'new' 1030-Disclosures [re: C.M.s' authored by CDCR Defs' agents between 2/15/18-to-6/05/19]. ii.) C.M.s dated: 2/15/18; 4/09/18 & 11/16/18(same source); 5/05/18; 7/17/18; 9/25/18; 10/08/18 & 12/27/19 (same source); 10/31/18; 12/19/18; 1/17/19; 1/24/19, 4/05/19; 3/07/19 & 6/05/19 (same source),...are based onfabrication(s) [partially per. Defs' agents own custom/practice of 'helping debriefer/debriefed dropouts corroborate CDCR's agenda(s)' e.g., DOM, §§ Gang Mgt./Debriefing; & admissions during 5/08/17, "Presentation..." by agents West & Clayton [Id., ¶¶89 ]. And, Plt's 'Ashker case' counsel, un-covering evidence of the 'deal-making' in Defs' 'debriefing processing units' "THU/DPU" which, includes teaching C.I.s "...What to give up & what not to give up..." Id.,¶¶15,82]

128. iii.) Examples of Defs' agents, recruiting dropout/debriefers to manufacture false allegations intended to discredit Plt's [solid peer support], via claim(s) Plt's peers are responsible for orders targeting Plt. [are C.I.s ref'd in C.M.s of (same sources), ref'd in # ii.) above]; such has been exposed as 100% false [& all above C.M.s, in ii.), are more examples of Defs' "systemic misuse of conf. info. as pretext...." Per 'Ashker' case' counsels' Complaince Monitoring; & on-going discovery. Id., ¶¶15,125  ∅]. Defs' ignore any/all C.I./C.M.s, supporting Plt's position of zero safety concerns [rejecting such via 'convoluted logic/suppositions' etc., e.g., 1030-Disclosures & 128Bs, issued on 8/06/19, re: C.M.s dated: 3/02/18; 6/07/18; 1/29/19; & 128B Chrono, dated: 3/22/18, re: peer's "Petition Supporting Ashker's Release...." ref'd in above ¶¶121,124  ∅]

129. On 8/13/19, Defs' Alfaro (Chair), Moak, Paris, Perez, held another SHAM DRB Hrg., reaffirming the two-prior DRB Actions [8/04/17, & 3/22/18], based on the same, custom & practice(s) as her co-cospirators [Id., ¶¶¶15,84-90,  "...systemic misuse of conf. info. (ref'd above), as pretext...." [Plt. did not bother to attend this hrg., based on SHAM nature of previous (2) hrgs.; & above ref'd bogus 'evidence', there's no point. Defs' have [made clear] that they are standing by their 8/04/17, decision, pending court resolution of Plt's challenge" (in 'Ashker case')]. Defs' alfaro, et al., pretext based decision on "...corroborated & overwhelming evidence pvovided by various C.I.s and/or staff directly, by validated AB members/assocs. that ASHKER is targeted." [Action Chrono, of 8/29/19p.11]

130. Jan. 2020, Def. Gipson, followed through w/her part in conspiracy; alleging she conducted a "new & impartial review of Plt's housing placement." Upholding the (3) prior DRB Actions. [rpt. dated: 4/07/20] Plt. was allowed to briefly review this rpt. on 8/13/20; & inspite of 'redactions', was able to identify numerous mischracterizations,& flasehoods (e.g., at p.4, ¶ 2, Gipson alleges: "The record is clear that Ashker requested to debrief on 5/01/17; On (3) seperate days participated in initial debrief intake interviews which began the debriefing process...." This one example of many, & is 100% False. See: ¶112 ]. Gipson parrot's Allison's 8/04/17, Decision, ref'd above ¶¶116  ; in transparent effort to supprt her co-conspirator(s) 'plan" eg, pata's 15,27-33,84-90 ]

131. On 4/29/21, Plt. attemds ICC, Chaired by Pfeiffer, who refers case to DRB, w/recommendation for release to a [lower level G.P., absent of enemies, etc.], based on STG-I Molina's, Investigation Closure Rpt., finding no evid. Plt. remains targeted [per C.I.s]

132. Prior to ICC, ASU-2, Counselor Geary, spoke to Plt.; she wanted to help him get to G.P., where he can program-feeling he'd been in ASU too long,& had a parole hrg. coming. Plt. requested to go to the recently created (in 2017) "Youth Offender Rehabilitation Communities" [YORC], he'd seen on Inst. channel, as a "Mentor"; & Geary had him complete application. Geary also asked Plt., "if CDCR agreed to let you go to G.P. would he drop his court-challenge..." Plt. replied "No, because CDCR Defs' have taken things too far w/their falsehoods/fabrications-smearing his name & being in ASU solitary for (4) years...."

*133.* At the 4/29/21, ICC Hrg., Geary, said the [YORC-MENTOR] Inst(s)., were not taking prisoners right now due to 'Covid' crisis, & your application w/be kept on file...."

*134.* On 5/27/21, Def. Gipson, Chaired Plt's DRB Hrg.; prior to hrg. Plt. given (17) 1030-Disclosures-spanning 2019-to-2021 [several of most recent one's Lt. Molina, had found supportive of Plt's release to G.P., & basis for Pfeiffer's Recommendation. Due to such, Plt. did not bother w/Rebuttal-Memo., etc.]. The Hrg. began w/Perez, reading aloud, all (17) Disclosures; then Gipson, asked for Plt's response ? Plt's response was "everyone involved in his placement/retention in ASU, since 5/01/17, have been wrong, & they know they've been wrong for what they have done-esp. relying on [7/26/17 C.M.]; & underlying basis thereof. And, it's all going to come out in court."

*135.* Gipson, then said she "had conducted her own investigation into the C.M.s, Lt. Molina & Wrden Pfeiffer, had relied on to support their recommendation for release to G.P. & she determined the information in the 'Disclosures' were not accurate, thereby, she was upholding the decisions of prior DRB Actions [retaining Plt. in ASU, w/order to place in RCGP,...pending Plt's decision to discontinue his court challenge, or, final resolution of challenge by court(s); based on overwhelming evidence of cont'd substantial safety concerns if released to G.P.]

*136.* Gipson's decision is simply, her carrying out her part of CDCR Defs' Kernan, Diaz, Allison, Alfaro, et al., conspiratorial 'plan' hatched [prior to Plt's release to KVSP 'A' Fac., G.P. Feb. 12, 2016. See: ¶¶ 15, 27-33, 84 -90, 116, 118 - 130                    ]

*137.* Above ref'd Defs' acts/ommisions summarized above, have been w/out legitimate penological justification, for the purpose of destroying Plt's leadership role(s) in 'Ashker' case, & Prisoners Human Rights Movement [& keep in solitary confinement/RCGP, for rest of time in CDCR system]. And, greatly exacerbating the permanent harm already inflicted by [29½ yrs. of solitary confinement torture for purpose of coercion], by subjection to [52 months & counting, of unwarranted solitary conf. torture in KVSP's ASU]; Defs' could have granted Plt. placement in [YORC as Mentor], (4yrs) ago.....based on there being zero [alleged per.c.o.c.r-Defs'] enemy/safety-concerns for p/t-as MENTOR]

*138.* A related example of CDCR Defs' customary "systemic misuse of conf. info. as pretext...." [as well as, egregious manipulation(s) of such to suit CDCR's agenda], is demonstrated by fact that: On 6/18/21, Plt. received a MEMORANDUM dated 6/18/21, re: "Notice of Confidential Information in Advance of Parole Hrg." authored by CDCR-CSU, Counselor Sheehan. This MEMORANDUM, contained ref. to(75) C.M.s, spanning 2/05/18-to-5/21/21[same ones relied on Defs' re: alleged safety concerns]; the summaries for them claiming Plt. is 'influential-leader of AB., involved in having prisoners assaulted & killed,; & receiving money from AB drug proceeds.' [CDCR Defs' twist C.M.s everyway]

*139.* Plt. attended his parole hrg. on 7/08/21; prior to this he'd submitted a Memo. in Support of Parole, in which he rebutted above ref'd C.M.s [refering Parole Bd. to the 'Ashker' court's 4/09/21, order re: 'Granting Plt's Extension of Compliance Montoring' based on "systemic misuse of C.I....' &'Plts' gang validations not valid....' ]][Id., ¶ 15]. CDCR/OCS, secretly 'validated' plt. in '88; he's never been found guilty of a single illegal gang-related act.          *23,*

*140.* The Parole Bd. stated they were not "relying on any (C.I.), in making decision." And, DENIED PAROLE [w/5 yr. deferal to next hrg.]; based in part on : 'Possible unresolved gang-issues, & lack of participation in needed rehabilitative programming....' [Notable is: Parole is routinely denied for prisoners serving 'term-to-life' terms, who are housed in (SHU; ASU; & RCGP); & this fact, together w/above exceppted-basis for denial, illustrates additional damage Plt's 52+ months in ASU has caused, due to: NO PROGRAMMING OPPORTUNITIES; & Defs' rampant "systemic misuse of C.I. as pretext...."Id.]

*141.* Plt. has a protected 'liberty interest' in being free of solitary confinement(ASU); & Plt's 52+ months (& counting), of such has exacerbated the permanent harm Plt. suffered [re: 29½yrs. of solitary]; due to torturous conditions of confinement in (ASU), has had on phys./mental health, as follows: In KVSP-ASU-2, Plt. spends nearly 24 hrs. a day in a smaller cell, more isolationly-closed off, than his PBSP-SHU, cell, he spent 26.8 yrs. in [Plt. is afforded approx. 10½ hrs. wkly. of 'out-of-cell' exercise in small cage at end of tier; + (3) 5-min. showers; &'law-library' in small cage (2) hrs. wkly]

*142.* Plt. is also deprived of: work; educ./voc. & rehabilitation/self-help programs. He is denied 'contact visits' [thus, has not had a visit w/fiance, since Oct.'16-other than (2) 30-min. 'video-visits', in early 2021]. His ability to communicate w' fiancee(& other supporters), and vice-versa, has been limited to: a wkly (15) min. call (w/fiance) & snail-mail, taking average of 3-to-4 wks.-one way (& fiance's recent use of JPay letters' process),...damaging relation(s), [per. part of DHFS'' 'plan; Id.]

*143.* Plt. has also been subject to ["Guard-One" Welfare Check(s); wherein, every (30) min. staff walk tiers, using heavy metal pipe to strke each metal cell-door's sensor-this policy was created by CDCR around 2014, in response to CDCR prisoner class action, re: mentally ill prisoners treatment (Coleman, et al. v. Newsom, et al.,USDC N.D. Cal. # 2:90-cv-00520-KJM-KJN); wherein, court gave CDCR 'option' of choosing way to ensure staff working solitary conf. units, were doing their mandated (security/welfare checks) & CDCR Sec. Beard, et al., are believed to have chosen "Guard-One" System described above w/out any concern re: Impact such would have on prisoners subject to having their metal doors [in KVSP-ASU-2, doors are solid steel, w/rubber seal around side jams & top of doors-w/interior of cells-hard surfaced concrete & steel. The combo of which results in heavy pipe-hitting doors every ½hr. (24/7), making very loud & extremely disruptive jarring 'metal-striking-metal' noise. Plt. experienced "Guard-One" his last 6-months in PBSP-SHU, & it was damaging enough to result in daily conflicts w/staff-who hate doing it & want prisoners to file suit(s) to end it; & so, staff hit doors extra hard. Doors & front of PBSP-SHU cells are open-metal,w/dime sized holes across entire front of cell. The totally enclosed ASU-2 cells substantially increase-startlingly loud noise; exacerbating Plt's serious damage from long-term solitary (e.g. 52-months of chronic sleep-deprivation,& all related thereto-difficulty focusing/concentrating/reading/writing; as well as, increased anxiety, anger, depression, hallucinations; every time Plt. hears the

staff approaching-often from their 'banging-on-doors', as they approach from tier next-
to Plt's tier ("G-Tier"), Plt. has strong physiological reactions: heart-rythm changes,
tightness in chest, sweating palms, anxiety, & anger-growing as they bang their way to
**his** cell-by then, he's feeling like exploding.]

144. CDCR Defs. Kernan, Diaz, Allison, Alfaro, Gipson, Pfeiffer, Stebbins, have been
repeatedly put on notice about the damaging effects "Guard-One" has on the prisoner-
class [via, numerous CDCR-602, Inmate Grievance/Appeals; law-suits; peaceful-protests,
by prisoners & outside loved ones/supporters, w/related madia attn., etc.], and they
have been  [Deliberately Indifferent] to such [e.g., "Guard-One" was re: Coleman, case
re: CDCR prisoner class w/mental illness. CDCR Defs' have imposed "Guard-One" on all
prisoners, incl. Plt.,who is not Coleman class-member; and, CDCR policy, screens pris-
oners for mental illness, prior to placement into 'solitary confinement' units. If a
prisoner has mental illness, he's placed in a unit where he gets more supervison etc.;
and, Defs' have failed/refused to take action to ameliorate the harmful impact of "Gu-
ard-One" as exemplified below]

145. Plt. has filed (2) CDCR-602, Inmate Appeals, re: "Guard-One" harmful impact [ref'd
above, on Plt., exacerbating damges from previous 29½ yrs. of solitary torture]; Plt.
requested an 'end-to-Guard-One;' 'staff-training on how to do "Guard-One" quietly;'
& ' to-be-issued-ear-plugs.' These Appeals were denied; & ignored; Plt's 1st Appeal, was
submitted at KVSP-ASU-2, on [2/20/18, Log # KVSP-0-18-00429], & was DENIIED, at all (3)
Levels of Review [By: Defs' Stebbins, Pfeiffer, & ALLISON, CDCR Director].

146. Each Level of Rev., of above Appeal, stated, Staff are ¦...to touch the pipe to
each cell door sensor, every half-hour...' Plt. rec'd 3rd Level Response/Denial on, or
about [8/01/18]; & he has (REPEATEDLY), pointed out the above quoted part of Appeal, to
countless staff, working ASU-2 [receiving very negative-response(s), most of the time;
inclusive of 'verbal-confrontations¦ & staff'banging on doors harder.' It got worse in
response to Plt's Appeal].

147. On 11/08/20, Plt. submitted his 2nd Appeal, re:"Guard-One" [CDCR's changed "Appeal
Process" so there are only (2) Levels of Rev. now [Wardens & Directors];this Appeal was
Log # KVSP-APP.# 000000057386. KVSP Def. Pfeiffer, DENIIED Relief [including 'request for
ear-plugs:' same as issued to prisoners at·San Quentin's ASU]; & Director, never replied.

148. A stark example of harm Plt's been experiencing from overall combo of Defs' acts &
ommisions summarized in this Second Amended Complaint, is demonstrated by the following:

149. By 9/21/18, Plt. had been experiencing an increasing sense of anxiety, depression,
& hopelessness associated w/29½yrs of torture/on-going retaliatory acts, ref'd above, &
indefinite solitary conf. in ASU-2 (w/increased "Guard-One" TORTURE),...& being virtual-
ly cut-off from his closest supporters [Weills & Travis, who are closest he has to liv-
ing family; & his fiance & kids],...that day it all came to hit him very hard; he felt
cell walls closing down to crush him; & he felt only way to stop this was by doing non-

stop exercises [Plt. began doing non-stop sets of 'push-ups' & 'squats,' back-to-back; while having a new pencil in his right hand, so he could quickly 'mark-off-sets,' on wall in front of him, w/out pausing on his 'sets.']. Plt. did this for over an hour, & all of a sudden, he 'blacked-out' [falling face-first to the concrete floor of cell; & the pencil he'd had in his hand was nearly completely impaled into his right (eyeball), causing extreme-pain; &'terror,' believing he'd lost his eye.].

*150,* On 9/24/18, Plt. was taken to outside hospital, & had catscans which revealed "fracture(s), in the orbital-bone, behind the eyeball (w/small bits of pencil-wood, & lead, imbedded in orbital lining between eyeball, * orbital-bone area); the doctor then pried apart Plt's eyelids, & it was first time he found out he still had some vision in right eye-very blurry at the time of exam-improving over following weeks. The 'Eye-Specialist,' told Plt. he was 'lucky-to-be-alive,' being that pencil nearly penetrated his brain. Plt. has recurrent-lasting "flash-backs", & is seriously worried about this...

*151,* Beginning around June 2021, Plt's experience [re: "Guard-One", & related  impact on him], has increased; Plt's repeat requests to KVSP's [Med./Mental Health Depts'], for ("ear-plugs"), to help lesson damage(s); incl.-help w/ability to sleep, etc., have been denied [NOTE: Many of the regular ASU-2, staff try to do the "guard-One" quitely; the main problem(s) are w/the 'non-regular' staff, working ASU-2, 'overtime', etc.; & hate doing it, & rush by cells-smacking pipe on doors....].

FIRST CLAIM FOR RELIEF
-VIOLATION OF THE FIRST AMENDMENT- (& Related Violation of (SA))

(By plt. against defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak, Paris, Prelip, Perez, Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, and Speidel)

*152,* Plaintiff realleges & fully incorporates herein paragraphs 1-*151* above.

*153,* By virtue of the forgoing, defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak, Paris, Prelip, Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, and Speidel, were acting under color of state law, have personally & wrongfully violated & continue to violate the rights of plaintiff under the First Amendment of the U.S. Constitution by subjecting him to on-going procational-retaliatory punishment, without any legitimate penological-justification/interest-in response to his lawful exercise of his right(s) to free speech, & petition [challenge conditions of confinement]; for: the purpose of destroying Plt's influential-leadership role(s) in 'Ashker' case [incl. (SA) Compliance-Monitoring], & "California Prisoner-Class Human Rights Movement (& related inclusive, return to, & indefinite placement in, solitary-confinement (& RCGP, 'purgatory until you die, parole, or agree to join our side, by fully cooperating & collaborating w/CDCR, via 'debriefing!'); via above named CDCR Defs' customary "systemic misuse of confidential information as a pretext to justify placement & retention in solitary confinement/RCGP, in violation of 'Ashker" case (SA., ¶¶ 25-27, 34, & 54)" [See: 'Ashker' case ORDER, filed 4/09/21]; and, related U.S. Const's, 1st, 8th, & 14th Amendments. [SEE: Following ¶¶ 154-to-157, ref. to specific defendants, & related paragraphs in complaint -re: each defendant....].

*26,*

154. CDCR Defs' in "ASHKER" case [& CCPOA's leadership], have vehemently opposed & publically villified lead plt., in response to his influential-leadership role(s) in the case, & related peaceful "Prisoners Human Rights Movement," via CDCR's public - propoganda campaign targeting plt.& (3 other co-principle prisoner reps); portraying them all as ["THE WORST-OF-THE-WORST"], in failed effort to counter plts' public ex- osure of CDCR's State Sanctioned Torture of 1,000s (subject to decades of solitary), & related devastating [GLOBAL CONDEMNATION], combining to force major reforms [very harm- ful to various stakeholders interests]. CDCR Defs' Kernan, Diaz, Allison, Alafaro, Gip- son, Moak, Perez, Paris, Prelip, have all been personally involved in "ASHKER" case, including (SA) Compliance Monitoring 'semiannual-meetings;' and, they have been aware of, directed, personally condoned, encouraged, & enabled, their KVSP agents (Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, & Speidel's, on-going, related acts/omissions), summarized in this [SAC, ¶¶ 32-to-52], due to such comporting w/CDCR Defs' 'plan/agenda' against plt. [SEE: SAC, ¶¶ 14-to-31]. Causing serious, on-going harm [paras 32-to-74]

155. CDCR Defs' in "ASHKER" case [Defs' Kernan, Diaz, Allison, Alafaro, & Gipson], also, denied plt. asst. of counsel [by imposing unwarranted, grossly disproportionate punitve/Bans [bans], on the (3) members of "ASHKER" plts' legal-team who worked close- ly w/plt. re: Compliance Monitoring 'semiannual-meeting(s)'& who provided critically - necessary personal guidance & suuport to plt.], causing serious harm [Id.,¶¶ 53-to-74].

156. CDCR Defs' in "ASHKER" case [Defs' Kernan, Diaz, Allison, Alfaro, Gipson, Paris, Prelip, Moak, & Perez], [w/ KVSP agents aid - Defs' Pfeiffer & ALAFA] are also personally responsible for their concerted, conspirato- rial-retaliatory acts/ommissions, and, related on-going harm to plt.[Id., ¶¶ 74-to-151].

157. By virtue of the following/forgoing, defendants Kernan, Diaz, Allison, Alfaro, & Gipson, acting under color of state law, have personally, & wrongfully violated & Conti- nue to violate the right of plt's ability to have "Confidential communications" & "Legal Assistance" [with/from], attorneys' Weills, Travis, & Siegel [including, but not limited to: these professional, trustworthy-knowledgable & personally supportive attys' counsel via mail, phonecalls, & visits re: "ASHKER" Compliance Monitoring; & plt's (52+) month long-challenge of "Ongoing Retaliation/Housing Placement;" As well as, plt's ability to obtain their expert-knowledgable asst. on his 'new' cases: Ashker v. Kernan, et al., USDC N.D. Cal. # 3:18-cv-05796-CW.06350-WHA; & THIS CASE: Ashker v. Pfeiffer, et al., USDC E.D. Cal. # 1:21-cv-00423-NONE-EPG (PC); both of which have merit(s) for success [w/qualified asst. of counsel]; & not so much, if plt's forced to proceed pro-se. Due in part to the serious on-going harm plt's subject to, from Defs' on-going provatory-retal iatory acts/omissions, & cruel/unusual conditions of confinement [& related exacerbat- ion of damage to plt's phys./psych. health & well-being]. To date, plt's been unable to obtain asst. on 'new' cases from any other attorneys. [Id., paras 53-to-74; ¶155]

SECOND CLAIM FOR RELIEF
VIOLATION OF THE EIGHTH AMENDMENT (& Related Violation of (SA))
(By plaintiff against defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak, Perez,
Paris, Prelip, Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, & Speidel )

158. Plaintiff realleges & fully incorporates herein paragraphs 1-157 above.

159. By virtue of the forgoing, defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak,
Perez, Paris, Prelip, Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, & Speidel,
acting under color of state law, have personally, & wrongfully violated & continue to
violate the rights of plaintiff under the Eighth Amendment of the U.S. Constitution by
their intentional-malicious acts/ommissions, have subjected plaintiff to cruel & unusual
punishment, without any legitimate-penological justification/interestre: i) The excess-
ively-restricted, punitive conditions at KVSP's G.P.s'; wherein, in response to explicit
terms of the "ASHKER" case (SA)[agreed to by CDCR lead Defs' in "ASHKER", i.e.,Kernan,
Diaz, Allison, Alfaro, Gipson], Plt. was released from 29½yrs. of illegal-torturous sol-
itary confinement [to: KVSP Level IV., 'A' Fac. G.P.; which, contrary to the "ASHKER"
case plts' class prior G.P. experience(s); & reasonable expectation(s) of what CDCR G.P.
encompasses [per. CCR, Title 15, Regulations, etc., was operated akin to a "Modified-
SHU", wherein, the majority of prisoners are warehoused, spending majority of time idle
in cells, based on Defs' failure to provide adequate space/security/supervision-incl.
lack of qualified instructors, etc. (resulting in few: jobs/educ./voc./rehabilitation-
self-help opps); & same re: lack of adequate 'visiting' space; phone-access, etc.], &
in response to plt's exposure of the above facts at the "ASHKER" case "Compliance Moni-
toring"'semiannual-meetings,' etc., Defs' Kernan, Diaz, Allison, Alafaro, Gipson, dir-
ected, been personally aware of & condoned, encouraged, & enabled, their KVSP agents
[Defs' Pfeiffer, Alafa, Hightower, Ortiz, Stebbins, Hammer, & Speidel's], subjection of
plt. to increasing provocative retaliatory acts - resulting in Eighth Amendment violat-
ion(s) [Id., ¶¶ 14-to-157], including, but not limited too (# ii-to-iv, below):
ii) The 3/20/17, "excessive use of unnecessary force," in response to plt's peaceful
protest action against wrongful return to solitary confinement; wherein, Defs' Stebbins,
Hammer, & Speidel's initiation of physical force (cell-extraction), resulted in Sgt's
deployment of (2 gas-grenades) into plt's small-sealed cell (& sprayed can of 'pepper-
spray' all over plt's head/face area), as plt. remained lying passively on lower-bunk
entire time [turning plt's cell into a type of 'gas-chamber' for over (9) minutes,before
staff ran into cell to forcibly apply restraints], causing plt. to experience 24hrs. of
intense burning discomfort (like being 'skinned-alive') [Id., ¶¶ 45-to-49].
iii. The combination of all above named defendants concerted, conspiratorial personal
acts/ommisions [Id., ¶¶ 14-to-74], caused plt. significant harm via exacerbation of his
already seriously damaged phys./psyche (from 29½yrs of solitary torture), thereby making
all defendants personally liable for related unwarranted placement & retention in KVSP's
soliatary-confinement unit (& related order for indefinite RCGP placement); wherein, pl.

has been & continues to be, subject to cruel & unusual punishment therein, w/out just cause; & which, defs' remain deliberately indefferent to, resulting in serious harm(s) to plt. [e.g., subjection to "Guard-One" resulting in 52½ months, & counting of chronic sleep deprivation, & all related to such - and, plt's severe right 'eyeball' injury - all of which greatly exacerbates plt's damage(s) from 29½ yrs. of prior torture[Id., ¶¶ 74-to-157].

THIRD CLAIM FOR RELIEF
VIOLATION OF THE FOURTEENTH AMENDMENT (& Related Violation of (SA))
(By plaintiff against defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak, Perez, Paris, Prelip, Pfeiffer, Alafa)

160. Plaintiff realleges & fully incorporates herein paragraphs 1-159 above.

161. By virtue of the forgoing, defendants Kernan, Diaz, Allison, Alfaro, Gipson, Moak, Perez, Paris, Prelip, Pfeiffer, Alafa, acting under color of state law, have personally, & wrongfully violated & continue to violate the rights of plaintiff under the Fourteenth Amendment of the U.S. Constitution [Liberty Interest-Procedural/Substantive Due Process], by subjecting plt. to indefinite solitary confinement torture in KVSP's ASU, via Defs' custom of "systemic misuse of confidential information as a pretext to justify "ASHKER" case class members (incl. plt.), return & retention in solitary confinement in violation of the settlement agreement." [Id., ¶¶ 15, 75-to-159]. Defs' do this by directing, being personally aware of, condoning, encouraging, & enabling: systemic fabrication(s), & alteration(s) of confidential information; inaccurately disclosing conf. info., & fail-ing to ensure the reliability of, and/or, relies on unreliable confidential information, provided by Defs' recruited-collaborating prison-gang dropouts, as a pretext to support -corroborate Defs' agenda against 'targeted' prisoners [like plt. in this case at bar (Id., ¶¶ 14-to-31, et. seq.)]; that is not otherwise supported [& is w/out legitimate penological interest/purpose], as summarized in this Second Amended Complaint's [FACTS], & above first two claims for relief. Defs' concerted, conspiratorial, arbitrary, capri-cious, & intentionally = malicious acts/ommissions violate plt's procedural/substantive due process rights, period. As well as, violating his liberty interest right to be free of such placement(s) [that impose atypical/significant hardship(s) on plt. in re: unique facts/circumstances summarized & exacerbation of decades of intentional damage(s) (Id.)].

PRAYER FOR RELIEF (DAMAGES)

Plaintiff has no immediate adequate remedy at law to redress the endless, escalating wrongs suffered as set forth in this Second Amended Complaint. As a result of the acts & ommissions of defendants, plaintiff has been injured & suffered damages as follows;

(a) Plaintiff has been subject to unrelenting, progressively-provocative-retaliatory acts in response to his successful exposure, global condemnation, & legal-challenge of CDCR's custom, policy, & practice(s) re: gang-mgt., & related subjection of 1,000s of prisoner class-members to State Sanctioned TORTURE of Solitary Confinement, in progress-

ively cruel & unusual conditions of confinement, for coercive-illegal purposes [over course of more than (3) DECADES]; the intentional & malicious purpose of Defs' being to destroy plt's influential-leadership in the "ASHKER" case (SA), Complaince Monitoring, & growing 'California Prisoner Human Rights Movement' [including related return/retention in solitary-subject to additional, non-stop "Guard-One" TORTURE; & RCGP 'purgatory' until he dies, goes insane, or debriefs. (There is NO PAROLE in RCGP)....

(b) Plaintiff has been denied attorneys asst. & support [professional & personal];

(c) Plaintiff has suffered physical injuries [e.g., 24hrs burning as if being 'skin-ned alive;' pencil buried into right 'eyeball' causing extreme pain, resulting in orbital frasture(s), & nearly causing death; 52½ months, & counting-chronic sleep-loss];

(d) Plaintiff has suffered emotional distress, embarrassment, humility, & exacerbat-ion of severe psychological damage.

WHEREFORE, PLAINTIFF REQUESTS THAT THIS COURT GRANT HIM RELIEF AS FOLLOWS:

(1) Declaratory relief finding that the acts/ommissions described above were & are unlawful;

(2) Injunctive relief requiring defendant Allison to expunge all records proven 'False' & manufactured/relied on by CDCR Defs' as pretextual in effort to legitimize intent to destroy/damage plaintiff [said records to be identified later]; to release plaintiff to a "Youth Offender Rehabilitation Community" [YORC], as a "MENTOR"; to rescind the bans imposed on attorneys Weills, & Siegel; and, to replace "Guard-One" Wel-fare Check, policy & practice, w/simple-easy-to-do-policy/practice [re: ensuring staff are doing their mandated "Security/Welfare Checks"], that do not exacerbate what are already crually-torturous conditions [e.g., replacement of metal-pipe / metal-door sen-sor, w/digital-type electronic system wherein sensor is passed over 'bar-code' on priso-ner-photo, attached to each door; meantime, provide 'ear-plugs' to all SHU/ASU prisoners]

(3) Compensatory damages to plaintiff, according to proof, re: severe phys./psych. damages suffered by plaintiff summarized herein;

(4) Punitive damages against each/all defendants, according to proof;

(5) Attorneys' fees & costs of the suit; and

(6) Such other relief as the Court may deem just, proper, & equitable.

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 19, 2021

By: _T. Ashk_
Todd Ashker, Plaintiff, In pro-se

VERIFICATION

I, Todd Ashker, hereby verify that the above Second Amended Complaint, is prepared by me, & is true & correct pursuant to penalty of perjury, at KVSP-ASU-2, Delano, California, on September 19, 2021.

/s/ _T. Ashk_
Todd Ashker, Plaintiff, In pro-se

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

Todd Ashker

v.                                          Case Number: 1:21-CV-00423-EPG

C. PFEIFFER, ET AL.,

                                            PROOF OF SERVICE

_____  /

I hereby certify that on _____Sept. 19, 2021_____, I served a copy

of the attached "Second Amended Complaint For Declaratory & Injunctive
Relief, & Damages (42 USC §1983) Demand for Jury Trial".
by placing a copy in a postage-paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at
KVSP-ASU-2, Box#5106, Delano, Cal. 93216
< per CDCR-Inst"Legal-Mail" policy >

(List Name and Address of Each
Defendant or Attorney Served)
            To: USDC-E.D.Cal.              / ¢copy to:
            - office of Clerk -            / Attys Travis &
            2500 Tulare St., Rm #1501      /  ER Johns
            Fresno, Cal. 93721-2201        /

I declare under penalty of perjury that the foregoing is true and correct.

                        _____T. Ashker_____
                        (Signature of Person Completing Service)